CHARLES G. GRANT *et al.*, Respondents, v. CHARLES REINHART *et al.*, Appellants.

St. Louis Court of Appeals, November 27, 1888.

1. **Malicious Attachment: PROBABLE CAUSE.** In an action for a malicious attachment, it is incumbent on the plaintiff to prove, not merely that no cause existed for the suing out of the attachment, but that no circumstances were brought to the cognizance of the party suing which would induce a reasonable and careful man to believe that the debtor had committed, or was about to commit, some act which the law deems sufficient to subject his property to attachment. If such circumstances came to the knowledge of the attaching plaintiff, and he acted upon them in an honest belief that the debtor had so subjected his property to attachment, the action cannot be maintained by the person sued, even though such belief was a mistaken one, and contrary to the fact.

Grant v. Reinhart.

2. **Malicious Attachment:** PROBABLE CAUSE. Where there is no dispute about the facts, the question of probable cause or the want of it, in suing out an attachment, is one of law. The plaintiffs in this cause, in a letter to the defendants, declared, in effect, their intention to repudiate an honest debt and to avoid its payment by some means if the defendants persisted in attempts to collect their claim by the lawful methods in common use. *Held* that it was the duty of the trial court to decide, as a matter of law, that there was probable cause for the attachment, and that the present action could not be maintained.

3. **Malicious Attachment:** PROBABLE CAUSE : MALICE. Malice and the want of probable cause are both essential to maintain an action for malicious attachment, and the burden of proof as to both is on the plaintiff. They are distinct ingredients of the wrong done, and neither one is dependent upon or necessarily inferable from the other. But it is possible for a jury to infer malice from the circumstances which go to establish the want of probable cause.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

REVERSED AND REMANDED.

*Walker & Walker*, for the appellants.

The doctrine laid down in *Beeson v. Southard*, 10 N. Y. ( 6 Seld.) 236, has been unhesitatingly followed. It was there held that " in an action for malicious prosecution, the plaintiff must allege and prove both malice and want of probable cause for the former suit. If there was probable cause, the action cannot be maintained, even though the prosecution complained of was malicious. Want of probable cause and malice must concur and the former cannot be inferred from any degree of malice which may be shown." *Stewart v. Sanborn*, 98 U. S. 195 ; *Buchanan v. Smith*, 16 Wallace, 277 ; *Sharpe v. Johnston*, 76 Mo. 660 ; *Burris v. North*, 64 Mo. 426 ; *Vansickle v. Brown*, 68 Mo. 627 ; *Spurling v. Conway*, 75 Mo. 512 ; 1 Sutherland on Damages, 748 ; *Murphy v. Larson*, 77 Ill. 175 ; *Stacey v. Publishing Co.*, 68 Me. 287 ; *Wiggins v. Coffin*, 3 Story, 94.

Grant v. Reinhart.

*Smith & Harrison* and *E. S. Robert*, for the respondents.

There was substantial evidence tending to prove malice and want of probable cause, and this court will not weigh the evidence. Probable cause is a mixed question of law and fact, and, the facts in this case being disputed, the court below properly submitted the question to the jury. *Sharpe v. Johnston*, 59 Mo. 557, 576; *Hill v. Palm*, 38 Mo. 13, and authorities there cited. In suits for malicious attachment it is not necessary for plaintiff to show express malice. Nor need malice be proved by direct and positive testimony. It may be inferred by the jury from the facts which go to establish want of probable cause. *Callahan v. Cafferatta*, 39 Mo. 136; *Holliday v. Stirling*, 62 Mo. 321; *Sharpe v. Johnston*, 59 Mo. 557, 576; *Sharpe v. Johnston*, 76 Mo. 660, *loc. cit.* 669. There was no evidence that defendants had advised with counsel as to the propriety of the attachment. The court below properly excluded evidence of the consultations had by defendants with their collecting agents who were not attorneys.

ROMBAUER, P. J., delivered the opinion of the court.

The plaintiffs were retailers of clocks and silverware in Kansas City and were formerly customers of the defendants who are wholesale dealers in the same articles in St. Louis. Prior to May 5, 1885, the plaintiffs discontinued their purchases from the defendants, remaining indebted to them in the sum of $261.05 on open account. The defendants placed the account in the hands of a collecting agent in St. Louis, who forwarded it to an attorney in Kansas City. The attorney called upon the plaintiffs and pressed them to pay or secure the claim. Immediately thereafter the plaintiffs addressed the following letter to the defendants:

"GRANT & ELBERG,
"1307 Main St., KANSAS CITY, MO.,
"May 5, 1885.
"REINHARD, DINKELMANN & CO.,
"ST. LOUIS, MO.,

*Dear Sirs :*—A lawyer called on us to-day in regard to your bill. Now we wish to let you understand just what we intend to do in the matter. We offered you a note due in six months, which you refused. We have a few hundred dollars invested in real estate here which we are offering for sale, and as soon as we sell, your account will be paid, as it is on account of your bill that we are going to sell, although we will lose by selling. Now if another lawyer sets his foot into our place, or if we are dunned in this manner for your bill, we shall consider the account squared. This is the last we shall write to you. Please understand that we can do no better than our best, and if you choose to try and bulldoze us into paying before we can, you will most certainly lose by it.

"Yours respectfully,
"GRANT & ELBERG."

After receipt of this letter the defendants sued out an attachment on the ground, among others, that the plaintiffs were about fraudulently to convey or assign, and about fraudulently to conceal, remove or dispose of their property or effects so as to hinder or delay their creditors. This attachment was levied on the plaintiffs' store-goods, worth about six hundred dollars, and was subsequently dissolved by the trial court in Kansas City, and its judgment affirmed by the court of appeals, whereupon the sheriff returned to the plaintiffs three hundred and forty dollars being the entire proceeds of their goods sold under the attachment.

The present action is one for malicious attachment, growing out of these proceedings. Upon the trial of the cause the jury found a verdict for the plaintiffs in

the sum of $3,858.33. The plaintiffs subsequently entered a compulsory *remittitur* of $1,939.16, one-half of their recovery, and the court entered judgment for the residue. The defendants appeal.

Error is assigned, in that the court excluded legal evidence offered by the defendants. We may dismiss this complaint with the observation that it is not well founded. The defendants offered to show that they laid the facts of the case fully before their collecting agents, before bringing the attachment suit, but as it was not shown that such agents were attorneys or persons learned in the law, the evidence was properly excluded. *Beal v. Robeson*, 8 Ired. 276 ; *Olmstead v. Partridge*, 16 Gray, 381.

The other errors assigned are that the verdict is against the evidence and that the damages are excessive. It is well settled in this class of cases that to justify a recovery, proof of the want of probable cause is absolutely essential. Malice and a want of probable cause are both essential ingredients of the action, but as malice may be inferred from a want of probable cause the latter alone must be established, whereupon the former may be inferred. If the circumstances brought to the claimant's knowledge are such as to induce a reasonable and careful man to believe that the debtor had committed, or was about to commit, some act which the law deems sufficient to subject his property to attachment, and acting upon such belief institutes the proceeding, he is not liable to an action for malicious attachment even though the attachment is subsequently dissolved, and even though he may have been misinformed as to the facts.

From this statement the following results necessarily flow. Whether an attachment can be sustained depends upon the existence of the facts warranting it, but whether an action for malicious attachment can be sustained when the facts do not exist depends upon the

honest belief of the plaintiff in the attachment in their existence, such belief being based on circumstances sufficiently strong to warrant it on the part of a reasonable and careful man.

When the facts are undisputed, probable cause is a question of law, and not of fact. The dispute as to facts in order to justify a submission of the case to the jury must be one materially affecting the question of the defendants' good faith or belief, and not one as to collateral facts of secondary importance. We have searched the record in vain to find in it any evidence of express malice, or any evidence of a want of probable cause, or of any substantial dispute touching any material fact affecting the good faith of the defendants' belief that the plaintiffs were about to dispose of their property in some manner to avoid the payment of a debt admittedly due. That the defendants sought to collect or secure their claim first by correspondence is conceded. That failing in this they placed it in the hands of a lawyer, as business-men generally do, is conceded. That the lawyer called upon the plaintiffs for this purpose and was ordered out of the store is conceded. That the only security plaintiffs offered for the claim was a third mortgage on property (which it would seem they controlled, although the title was in the name of the wife and mother-in-law of one of the plaintiffs) is conceded. That they wrote the letter of May 5, hereinabove recited, to the defendants, is conceded, and we do not hesitate to say that as a matter of law that letter can bear no other rational interpretation than that it was the intention of plaintiffs to repudiate an honest debt, and avoid its payment by some means if the defendants persisted in attempts to collect their claim in a manner warranted by the laws of the land and usually adopted by business-men.

The defendant who made the affidavit in the attachment testified: "I was afraid at the time, believing

they intended to convey their property, as having taken exceptions to my giving my account to a collector, after it was past due some four or five months. They refused to deal with my agent and had failed to give us security, they said they were going to consider the account square, and I was afraid by bringing a suit and trying to get a judgment in the usual way, that in the meantime they would have everything disposed of or concealed or taken away, so that I could not issue an execution against them, and collect my account in that way," and this testimony is in no way controverted either by surrounding circumstances or any evidence to the contrary. It must be borne in mind that this letter is the last communication that passed between the parties prior to the attachment, that the plaintiffs resided at a great distance from defendants, and that the only means the defendants had of forming a belief as to plaintiffs' intentions was from communications received from the plaintiffs, or from defendants' agent, whom the plaintiffs had ordered out of the store.

In a note to the leading case of *Munns v. Dupont*, 1 Am. L. C. 219, the following rule is laid down, and supported by the citation of numerous decisions, on the subject of probable cause: "The court cannot assume the decision of the question of probable cause unless the facts are undisputed. But if there is no fact in dispute, * * * or if the evidence consists of the direct testimony of an unimpeached witness, such that if the jury found against it the court would order a new trial, or if admitting all the facts in evidence on one side or the other, there still is or is not probable cause, it is proper for the court to decide the question of probable cause." In that case Justice Washington charged the jury in substance that if they found certain facts, then there was probable cause for the prosecution, the plaintiff having so conducted himself as to become a just object of suspicion, and further stated in substance that the

Grant v. Reinhart.

plaintiff cannot invoke the assistance of the law to compensate him for losses caused by his own folly.

It will thus appear that in the case at bar the plaintiffs, instead of affirmatively showing want of probable cause, as it was incumbent upon them to do, affirmatively showed the contrary, and this evidence was not controverted in any manner because evidence of the honesty of their intentions, or of their innocence of the fraud laid to their charge, was material only in so far as knowledge thereof was brought home to the defendants and influenced their action. *Breman v. Tracy*, 2 Mo. App. 542.

Under these circumstances it was the duty of the trial court to decide as a matter of law that the defendants had probable cause for the attachment, and the plaintiffs could not recover in this action. For the attachment improvidently sued out, the plaintiffs have full recourse on the attachment bond. As the facts disclosed do not warrant any recovery in this form of action it is useless to remand the cause. Judgment reversed. PEERS, J., concurs; THOMPSON, J., dissents.

ROMBAUER, P. J., delivered the opinion of the court on motion for rehearing.

The plaintiffs move for a rehearing mainly on the ground that the point on which we decided the case in favor of the defendants was not urged in the court below, and not having been called to the attention of the trial court, the plaintiffs had no opportunity to meet it in argument.

We have reversed the judgment because the record fails to show any evidence of express malice, and affirmatively shows the existence of probable cause for the prosecution. The motion for new trial states that the verdict is against the evidence. One of the assignments of errors in this court is that the verdict is against the

evidence, and although the defendants' printed argument deals mainly with the question of absence of malice, the attention of the trial court and of the plaintiffs has been sufficiently called to the fact that the verdict is claimed to be unsupported by the evidence, to justify us to make the disposition of the case which we have made. The supreme court and this court have frequently decided that a verdict unsupported by substantial evidence cannot stand.

What we have said in the opinion has been said upon a careful examination of the evidence in the record, and the applicatory law, and there is nothing which we desire to change or modify on the subjects therein discussed.

In view of the fact, however, that the plaintiffs now claim that their attention was mainly directed to the question of malice, by reason whereof they did not fully present their views on the question of probable cause in this court, we deem it proper to add that even on the question of malice the case appears to have been tried on a thorough misconception of the law.

Malice and the want of probable cause are both essential ingredients of this action, and the burden of proof as to both rests upon the plaintiff. The court upon the plaintiffs' request instructed the jury as follows :

" The court instructs the jury that it is not necessary that plaintiffs shall have shown in this case that defendants were actuated by ill-will against them in swearing out the attachment in question, but that if said attachment was without probable cause and if the same was wrongfully and intentionally caused by defendants, *then the verdict should be for plaintiffs.*"

This instruction in substance told the jury that they should find for the plaintiffs, in case they found there was no probable cause for the attachment, thus making malice an inference of law or necessary inference from the want of probable cause. So far from this being the

law it has been repeatedly decided in this state that malice is not a legal inference from the want of probable cause. *Sharpe v. Johnston*, 59 Mo. 575 ; *Van Sickel v. Brown*, 68 Mo. 638. Neither is it a necessary inference, nor in all cases an admissible inference even. . In *Sharpe v. Johnston*, *supra*, Judge Hough states the law on that subject in a very clear and comprehensive manner, thus : "It is a proposition too well settled to require the citation of any authorities in its support, that the existence of malice and the want of probable cause are both necessary to the maintenance of an action for malicious prosecution. *They are distinct and essential ingredients of this private wrong.* If there be reasonable or probable cause, no malice, however distinctly proved, will make the defendant liable. The proof of malice does not establish the want of probable cause, nor does the proof of want of probable cause necessarily establish the existence of malice. That is to say, malice is not an inference of law from the want of probable cause. Malice, however, need not be proved by direct and positive testimony, but may be inferred from the facts which go to establish the want of probable cause, and this is all that is meant when it is said that malice may be inferred from the want of probable cause. But the jury are not required to make this inference, *and they should not be instructed that such inference may be made, unless the facts attending the conduct and determination of the prosecution, and those adduced to establish the want of probable cause, are of a character to warrant such inference.*"

An elaborate discussion of this subject by C. J. Redfield, is found in *Barron v. Mason*, 31 Vt. 189, 202, where, upon a full review of the authorities, the learned judge reaches the conclusion that good faith in the defendant is a sufficient justification, and is not equivalent to probable cause, and when good faith is shown no inference of malice can arise even though probable

cause be wanting. Referring to the English cases on the subject, the judge gives the following summary : "That the English courts regard the question of malice as a distinct question, and in issue in every case of this kind tried upon the general issue, or which may always be put in issue by the defendant, the cases abundantly prove. In *Williams v. Taylor*, 6 Bing. 186, Tindal, C. J., said, 'what shall amount to such a combination of malice and want of probable cause is so much matter of fact in each individual case as to render it impossible to lay down any general rule on the subject ; but there ought to be enough to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused.' In *Mitchell v. Jenkins*, 5 B. & Ad. 588, Denman, Ch. J., said, 'it is still incumbent upon the plaintiff to allege and prove malice as an independent fact. They (the jury) however, are to decide, as matter of fact, whether there be malice or not.' Parke, J., said the defendant is excused, if 'acting *bona fide* under a wrong notion of the law, and pursuant to legal advice.' Patterson, J., said, 'and the jury (are to decide) that there is malice.' And in *Mitchell v. Williams*, 11 M. & W. 205, Parke, B., said, that in the absence of reasonable or probable cause, 'that may throw the burden of proof on the defendant that he believed there was.' "

It will be thus seen that in the case at bar, the verdict is equally unsupported by the evidence, both as to want of probable cause and malice, because even if there had been some evidence showing the want of probable cause the case was not one where the jury could be directed to infer malice from that fact alone.

We are requested, in case we deny the motion, to remand the cause for new trial. While we are averse to remanding a cause where the evidence fails to support a cause of action, we have departed from the practice in some instances to enable the parties to settle all their

controversies in a pending action without being driven to a new action, and have done so at the present term in *Froehly v. Ins. Co.*, 32 Mo. App. 302. In the case at bar the plaintiffs have clearly an action on the attachment bond. They dismissed their count on the bond upon the trial, when they were permitted to go to the jury on the other branch of the case, but there seems to be no good reason why they should be driven to a new action on the attachment bond as long as all parties are before the court, and may settle all their controversies growing out of this transaction in this proceeding. For the purpose of enabling them to do so, we will so modify the judgment as to remand the cause.

Motion for rehearing overruled, and judgment modified accordingly. PEERS, J., concurs; THOMPSON, J., concurs in the result.