SHEEHAN AND LOLER TRANSPORTATION COMPANY, Respondent, v. JAMES T. SIMS *et al.*, Appellants.

### St. Louis Court of Appeals, May 14, 1889.

1. **Practice, Trial:** MOTION TO STRIKE OUT: AMENDMENT. A motion to strike out part of a petition should be presented before an answer is filed. It comes too late when the case is called for trial. No rule of procedure cuts off an amendment of a pleading, otherwise proper, after the cause has been remanded from an appellate court.

Sheehan & Loler Trans. Co. v. Sims.

2. **Plea of Privilege:** SERVICE ON NON-RESIDENT. A plea of privilege, on the ground that the defendant was a non-resident, and was served with process when in attendance on the trial of a cause in the circuit court in this state, wherein he was the sole defendant, is not available after the defendant has appeared by counsel in the action ; has filed a demurrer to the petition on grounds other than jurisdictional; has entered into a stipulation concerning steps in the cause ; has appealed from a judgment against him and secured a reversal ; and, after such reversal, and before answering an amended petition, has given notice to take depositions. All these facts were apparent on the record, requiring no issue, proof, or finding, and the plea might have been stricken out on motion. The waiver of privilege was a conclusion of law apparent on the record, and there was no error in refusing all instructions bearing on it.

3. **Res Adjudicata:** INCONSISTENT DEFENSES. A defendant cannot rely on a former judgment as *res adjudicata* of the matter in issue, and at the same time insist that such former judgment was void. Neither of the two defenses can be properly accepted, since the party himself defeats either, by maintaining the other.

4. **Practice, Trial:** REPLY FILED AFTER EVIDENCE CLOSED. There was no error in a permission given the plaintiff to file a reply after the evidence on both sides was closed.

5. **Practice, Trial:** STATUTE OF LIMITATIONS. The plea of the statute of limitations may be effectually anticipated in a petition by an averment that, before the statute began to run, the defendant "departed from and has ever since resided out of the state of Missouri, and still so resides," if it inferentially appears from the pleading and evidence that the defendant was a resident of this state up to the time of such departure ; and a defectiveness of averment in that particular will be cured by a verdict which sustains the inference.

6. **Practice, Appellate:** ERROR NOT PREJUDICIAL. It is not prejudicial error to give an instruction which assumes the existence of a fact not disputed, and which must have been found by the jury, if submitted to them. Such an error does not "materially" affect the merits of the action; and the appellate court is prohibited by statute from reversing a judgment on account thereof. (Revised Statutes, section 3775.)

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES A. SEDDON, Judge.

AFFIRMED.

*Thomas G. Allen* and *George E. Smith*, for the appellants.

The motion to strike out the first count of the amended petition should have been sustained. We concede that the right of amendment before trial and submission is practically unlimited. But here there had been a submission, judgment, appeal and reversal. The issues raised by defendant's plea in abatement, and plaintiff's general denial, should have been first and separately tried. *Little v. Harrington*, 71 Mo. 390; *Byler v. Jones*, 79 Mo. 261; *Cohn v. Lehman*, 93 Mo. 574; *Thompson v. Bronson*, 17 Mo. App. 456. The plea of privilege was good, both in substance and form. Parties, as well as witnesses, are privileged from arrest and service of process while in good faith attending an actual trial. *Matthews v. Tufts*, 87 N. Y. 570; *Preston v. Grier*, 66 N. Y. 124. The first instruction follows the petition, and is erroneous in not requiring the jury to find that defendant was a resident of the state at the time he departed. The section (3236) applies only to residents of this state. *Zoll v. Carnahan*, 83 Mo. 35; *Orr v. Wilmarth*, 95 Mo. 212; *Bensley v. Haeberle*, 20 Mo. App. 648. Instructions authorizing a recovery must embrace all the material issues, tendered by either party, upon which evidence has been received. *Fitzgerald v. Hayward*, 50 Mo. 516; *Birtwhistle v. Woodward*, 95 Mo. 113; *Hayner v. Churchill*, 29 Mo. App. 676; *Bank v. Metcalf*, Mo. App. 384. It was error to permit the reply to be amended, setting up affirmative matter after both sides had rested in chief. Revised Statutes, sec. 3572. If the plaintiff had dismissed its first count and gone to the jury on the second, we would have had no cause to complain; but when it dismissed its second count, thus securing its first judgment unimpeached, and took a second judgment on the first count, we think we are justified in complaining that

plaintiff got more than it was entitled to, on its own admissions and showing. The admission that there was but one cause of action in the two counts was fatal to the first count, because it followed, as matter of law, that the first alleged cause of action had been swallowed by the second.

*Smith & Harrison*, for the respondent.

"One who has taken a particular position in the course of a litigation must, while that position remains unretracted, act consistently with it." Bigelow on Estoppel [3 Ed.] p. 601 ; *Railroad v. Joyce, Ex.*, 8 Rich. (S. C.) 117 ; *Reaper v. Railroad*, 49 Cal. 414 ; *Lawrence v. Ballou*, 50 Cal. 258 ; *Bruce v. Sims*, 34 Mo. 247 ; *Speck v. Riggen*, 40 Mo. 405 ; *Donnan v. Printing Co.*, 70 Mo. 169 ; *Krey v. Hussman*, 21 Mo. App. 343. The defendant, in his pleading and evidence, while attacking the judgment sued on in the second count as being void as to him, cannot be heard to aver that it is valid as to him, for the purpose of defeating the first count of said amended petition. The objection, that the amendment of petition changes the cause of action, must be made at the time the petition is amended. It cannot be made for the first time at the trial, nor after answer to the merits (*Spurlock v. Railroad*, 93 Mo. 530) ; but the court below had power to make the amendment by restoring the first count, and there was no abuse of its discretion in doing so. *Spurlock v. Railroad*, 93 Mo. 530 ; *Grant v. Reinhart*, 33 Mo. App. 74. The appearance of the defendant to the original petition, and taking steps in the cause, which in law admits that the defendant is subject to the jurisdiction of the court in the particular case, is a waiver of all previous defects in the process and its service. This is the rule here. *Tower v. Moore*, 52 Mo. 118 ; *Bank v. Stumpe*, 2 Mo. App. 545 ; *Orear v. Clough*, 52 Mo. 55 ; *Whiting v. Budd*, 5 Mo. 443. Courts always construe a question

of privilege strongly against one urging it, and have held that it must be taken advantage of promptly and before any proceedings are had by the party claiming the privilege in the case. If a general appearance is entered, or if the party claiming the privilege first, or before making any claim thereto, allows the other party to go on and take any step in the case or urges any other defense, he will be held to have waived the right. *Matthews v. Puffer*, 10 Fed. Rep. 606; *Pollard v. Railroad*, 7 Abb. Prac. (N. S.) 70; *Petrie v. Fitzgerald*, 1 Daly, 401, and cases cited; *Rice v. Railroad*, 3 Mo. App. 27, 33. It appears by clear, conclusive and undisputed testimony that defendant Sims was a resident of St. Louis when the account sued on accrued, and that within a year thereafter he departed from, and has since resided out of, the state. Under such circumstances the court below had the right to assume all the facts necessary to take the case out of the statute of limitations, and there was no error in the instruction complained of. *Fields v. Railroad*, 80 Mo. 203, *loc. cit.* 206, and cases cited; *Hall v. Railroad*, 74 Mo. 298; *Price v. Haeberle*, 25 Mo. App. 201; *Herriman v. Railroad*, 27 Mo. App. 435.

THOMPSON, J., delivered the opinion of the court.

This action was before the court on a former appeal. 28 Mo. App. 64. It was originally brought against James T. Sims as sole defendant. The original petition contained two counts. The first was for services rendered in towing barges for the defendant. The second was upon a judgment obtained by the plaintiff in the circuit court of the city of St. Louis, jointly against the defendant Sims and one Rogers. The plaintiff dismissed his action as to the first count and took judgment upon the second count, and the defendant appealed to this court. This court, holding that a second action might be maintained upon the judgment, nevertheless reversed the judgment, because the original judgment

which was the foundation of the second count of the petition, being a judgment against the defendant Sims and Rogers jointly, could not be the foundation of an action against Sims separately. Upon the cause being remanded to the circuit court, the plaintiff filed an amended petition, which in substance reinstated the first count of its original petition which it had dismissed. The defendant Sims filed an answer to this amended petition and the plaintiff filed a reply, thus joining issue on the answer. The defendant Rogers did not defend or appeal.

I. Thereafter, when the cause was called for trial, the defendant Sims presented a motion in writing to strike out the first count of the amended petition, for reasons which we shall not recite in detail, but which in substance were that such an amendment was not admissible after the cause had been remanded by this court to the circuit court. The court overruled this motion to strike out. The trial resulted in a verdict and judgment for the plaintiff and the defendant Sims again appeals to this court. The first error which he assigns is the overruling of this motion. It is clear that no error was committed in this ruling, for two reasons. (1) The motion to strike out should have been made before the defendant answered, and came too late when the case was called for trial. *Spurlock v. Railroad*, 93 Mo. 530, 537. (2) The motion was also bad in substance. There is no rule of procedure which cuts off an amendment of the pleadings, otherwise proper, after the cause has been remanded by an appellate court. It is the constant practice to allow such amendments, and an amendment restoring an abandoned count in the petition was recommended by this court in the case of *Grant v. Reinhart*, 33 Mo. App. 74.

II. One paragraph of the answer filed to the amended petition after the cause was remanded by this court consisted of a plea in abatement on the ground of privilege. This plea set up in substance that the

defendant Sims was a non-resident of this state, and
that he was served with summons in this action while
attending as a defendant on the trial of another action
at law in the circuit court of the city of St. Louis,
in which he was sole defendant. This plea in abate-
ment would not have been bad, as the respondent argues,
but would have been good in law, if it had been taken
*in limine* and if it had not been waived. *Christian v.
Williams*, 35 Mo. App. 297. But in this case, it was
so clearly waived that the attempt to plead in abatement
on this ground in the amended answer seems scarcely
less than a trifling with the administration of justice.
The defendant Sims had appeared by counsel in the
action ; had filed a demurrer to the petition on grounds
other than jurisdictional ; had entered into a stipulation
concerning certain substantial steps in the cause ; had
appealed from the judgment which was rendered against
him to this court ; had appeared in this court by counsel
and secured a reversal of that judgment; and had, after
this reversal and before filing his answer to the amended
petition, given notice to take depositions. All these
facts were proved to the jury *by the record*, and there
was not, and could not have been, any countervailing
evidence. There was therefore really no issue on this
plea in abatement to try. The circuit court judi-
cially knew the facts shown by its own record in the
particular case, and this part of the answer, raising this
plea of privilege at this late stage of the proceedings,
might have been stricken out on motion. The trial of it
was mere supererogation, and any error or irregularity
committed in the trial of it could not therefore have
been prejudicial to the defendant. This assignment of
error, that the court did not try the plea in abatement
separately, is, therefore, not well taken.

Nor is it material that the jury made no finding in
respect of this issue, because they could have made but
one finding, and that might have been directed by the

court on the evidence, and it must have been against the defendant; and we will not reverse the judgment, on the defendant's appeal, in order to have such a finding made. Nor is it any error of which the defendant can complain that the court, after having admitted evidence on this issue without objection, refused all instructions bearing upon it. All of them that were tendered by the defendant were erroneous, because the records of the court showed, as a mere conclusion of law, that the claim of privilege had been waived.

III. The next assignment of error is that the court should have given an instruction in the nature of a demurrer to the evidence at the close of the plaintiff's case. This contention is grounded upon the fact that it came out in evidence that the services which were the subject of the first count in the petition were the same services for which the judgment, which was the subject of the second count in the petition, had been rendered. But it is to be said that the defendant Sims, in one of the paragraphs of his answer, pleaded that this judgment was void, for the reason that, when the action which resulted in it was commenced, he was a non-resident of the state of Missouri, and had never been served with process therein, and had never appeared therein by counsel or otherwise, and had no notice of the proceeding until long after the judgment had been rendered. He did not, however, set up in his answer, as *res adjudicata*, that the demand which was the subject of the first count in the petition was the same demand which was the subject of this judgment, though he did allege the fact. He did not do this for the obvious reason that he could not in his answer take the contradictory positions that this judgment, which was the foundation of the second count, was *void* because it had been rendered against him without service of process and without any appearance on his part, and that it was at the same time

*good* so far as to constitute an estoppel against prosecuting in the first count the demand which was the foundation of that judgment. But while he could not take these inconsistent positions in his answer, he endeavored to have the court take them for him at the end of the plaintiff's case, by an instruction for a nonsuit. This he could not do. He had taken the position that the judgment was void, and he could not recede from that position and claim that it was valid, for the purpose of using it as an estoppel against the prosecution of the first count in the petition.

But if there had been any error in this ruling, it was cured by what subsequently took place at the trial. It appeared from the defendant's evidence that he had never authorized the counsel who professed to appear for him in the action, which resulted in the judgment, so to appear. As process had not been served upon him in that action, that judgment was therefore void as to him, and the jury must have so found, if the question had been submitted to them. To avoid this, the plaintiff, at the close of the evidence, dismissed his action as to the second count and elected to stand on the first count, thereby not disputing so much of the answer as pleaded that the judgment sued on in the second count was void. The defendant is therefore in no position to complain, after having been successful in defeating a recovery in an action on this judgment because it was *void*, that the court did not at the same time treat it as *valid*, for the purpose of estopping the plaintiff from maintaining his action upon the cause of action which he had endeavored to ripen into the void judgment. It was either valid or void, and it could not be at once valid and void for the purpose of enabling the defendant to defeat a recovery of the debt which was its foundation. He elected to take the position that it was void, and it was not admissible for him to change positions in the same action, and, to use an expression which has almost

acquired a technical meaning in legal procedure, blow hot and cold at the same time.

IV. The next assignment of error is that the court should not have permitted the plaintiff to file a reply setting up affirmative matter after both sides had rested in chief. The affirmative matter in this reply consisted simply of an averment of facts showing that the defendant Sims had waived the claim of privilege set up in his answer, by appearing and taking the various steps with reference to the merits of the case which we have already recited. There was no error in this upon any conception. By section 3567, Revised Statutes, "The court may at any time before final judgment, in furtherance of justice, and on such terms as may be proper, amend any record, *pleading*, * * * by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved." There is nothing in section 3572, which prohibits the court from allowing an amendment to the reply after the evidence is all in, so as to make it conform to the evidence ; and the granting of this amendment was within the sound discretion of the court. But, as we have already seen, the issue was scarcely more than a sham issue, for the claim of privilege had been waived by several steps which appeared of record in the case, and consequently no ruling with reference to it could have been prejudicial.

V. The next assignment of error is that the following instruction is not good in law : "If the jury find and believe from the evidence that plaintiff and Martin Michael did the towing mentioned in the petition in this cause for the firm of Rogers and Sims and at their request, and that said Michael afterwards sold and assigned his interest in the same to the plaintiffs before this suit, and that, within five years next after said towing was done, said Sims departed from and has

resided out of this state and still continues so to reside, then the jury will find for the plaintiff on the first count of the petition in this cause, unless the jury find and believe from the evidence that such towing has been paid for." The ground of objection to this instruction relates to the statute of limitations. The services sued for in the first count of the petition were rendered, as alleged therein and as the evidence tended to show, in the year 1877. Consequently the cause of action for such services was barred by the statute of limitations of five years, unless some circumstance had taken place suspending the bar of the statute. The petition set up that such a circumstance had taken place, in the following language: "Plaintiff further states that, shortly after this cause of action in this count stated accrued, to-wit, within five years from and after the accrual thereof, the defendant, James T. Sims, departed from and has ever since resided out of the state of Missouri, and still so resides." In one paragraph of his answer the defendant Sims pleaded the statute of limitations of five years. The statute applicatory to this allegation (R. S., sec. 3236) is as follows: "If, at any time, when any cause of action herein specified accrues against any person who is a resident of this state, and he is absent therefrom, such action may be commenced within the times herein respectively limited, after the return of such person into the state; and if, after such cause of action shall have accrued, such person depart from and reside out of this state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action." The objection taken to the clause of the petition above quoted, and to the above instruction, is that neither of them states that the defendant Sims was *a resident of the state* prior to his departure therefrom before the expiration of five years from the accrual of the right of action. This clause of the statute applies only in cases where the

debtor was a resident of the state when the cause of action accrued, and thereafter departed from the state before the bar of the statute had attached. It has no application to a case where the debtor was a non-resident when the cause of action accrued. *Orr v. Wilmarth*, 95 Mo. 212; *Thomas v. Black*, 22 Mo. 331; *Scroggs v. Daugherty*, 53' Mo. 497; *Fike v. Clark*, 55 Mo. 105. Neither the petition nor the above instruction, therefore, stated except inferentially an exception within this clause of the statute; and without this, or some other exception (and none other was alleged or proved), the demand which was the subject of the first count was barred by limitation on the face of the petition. But we think that this fact is inferentially stated in the petition, and that the defectiveness of the statement is cured by the verdict. Then as to the instruction, it is to be observed that the evidence, so far as it bears upon this point, is not controverted at all. It appears from the evidence that Sims and Rogers (who is impleaded with him as defendant but who does not defend) were, in the year 1877, partners, and as such had a contract with the city of St. Louis for the doing of work on the Mill creek sewer in this city; that the services sued for in the first count consisted chiefly in towing barges of stone which these partners had got out to be used in the construction of the sewer. It also appeared that Sims was present in the city of St. Louis attending to the business of the partnership and of this contract for perhaps a year, and that he left St. Louis in the year 1878. The witnesses were examined with considerable minuteness with reference to the question whether Sims had been a *non-resident* of St. Louis continuously since 1878, or whether he may not have resided in the city since that time, so that process might have been served upon him; but it seems to have been taken for granted that, prior to 1878, he was a *resident* of the city. One witness, Mr. Bollman,

who had in charge the collection of the bill or bills for the services sued for in the first count, speaks of dunning him repeatedly and of finally calling at his residence on Morgan street and being informed by a lady there that he had left the city. Mr. Rogers, his partner, also stated, but under objection, that, prior to his leaving in 1878, he had lived in the city on Chestnut street. The question which elicited this answer was objected to as irrelevant. Assuming, that it was technically irrelevant, on the ground that there was no averment in the petition that Sims had ever been a resident of this state, yet it does not appear that, by this objection or otherwise, the attention of the court or counsel was called to the defectiveness of the averment of the petition in this respect, or that it had been thought of by either party at the trial. The residence spoken of in the statute (R. S., sec. 3236) is not necessarily synonymous with *domicile*. It has been held that, although the legal domicile of the debtor (which depends largely upon the question of intent) may continue to be in the state, yet his "absence from the state," such as will, for a considerable period, render it impossible to obtain a service of process upon him, is such an absence as will bring the case within this section and suspend the running of the statute of limitations. *Rhodes v. Farish*, 16 Mo. App. 433; *Bensley v. Haeberle*, 20 Mo. App. 648. By parity of reasoning it must be held that the residence in the state referred to in the statute is not that permanent residence which is implied by the word domicile, and which confers the rights of citizenship, but is that continuous and habitual dwelling without the state which renders the service of process practicable and easy. That the defendant Sims was in this sense a resident of this state and of this city during the periods when the cause of action embraced in the first count accrued, and for several months thereafter, appears from undisputed evidence

which was received without objection. It results that the imperfection of the above instruction consisted in assuming the existence of a fact which was not disputed, and which, if submitted to the jury, ought to have been found in favor of the plaintiff. It is not prejudicial error to give an instruction which assumes the existence of such a fact. *Herriman v. Railroad*, 27 Mo. App. 436; *Price v. Haeberle*, 25 Mo. App. 202; *Fields v. Railroad*, 80 Mo. 203; *Barr v. Armstrong*, 56 Mo. 577; *Caldwell v. Stephens*, 57 Mo. 589; *Hall v. Railroad*, 74 Mo. 298. It seems very clear, therefore, that, while a technical error was here committed, it was an error which could have had no probable influence upon the merits of the controversy prejudicial to the appellant; that if we were to reverse the judgment because of this error it would merely result in an amendment of the petition, curing the defectiveness of the averment above quoted, which must be regarded as cured by the verdict, and in submitting to the jury, upon an instruction cured of the like defect, an issue not controverted by the evidence. The error must therefore be regarded as an error not "materially" affecting the merits of the action, and for such an error we are prohibited by statute from reversing judgments. R. S., sec. 3775.

The judgment will accordingly be affirmed. All the judges concur.

THOMPSON, J., delivered the opinion of the court on a motion for rehearing.

A rehearing is asked in this cause on two grounds: (1) That the court erred in ruling that the defense in abatement had been waived by the appellant. (2) That the definition, in the opinion already given, of a "resident of this state" as used in the statute of limitations, is erroneous and in conflict with controlling decisions of the supreme court.

I. The first ground of the motion is predicated upon the argument that the petition was demurrable

on its face for want of necessary parties defendant ; that the right of a defendant to demur for the statutory causes stands upon the same, and as firm a ground in the code as his right to answer; that the common-law rule in regard to special pleas is abrogated by the code, which provides that "the only pleading on the part of a defendant is either a demurrer or an answer" ( R. S., sec. 3513 ), and that the defendant "may set forth in his answer as many defenses   *   *   *   as he may have," etc.   R. S., sec. 3522.   These provisions, it is argued, abolish all separate, special pleas, and with them the common-law doctrine of waiver.   The case of *Little v. Harrington*, 71 Mo. 390, is cited in support of this view. That case is no authority for the position taken.   It does indeed lay down the general rule that "it is evident. from these statutory provisions, that only *one* answer is contemplated, and this to contain whatever defense or defenses the defendant may have, thus dispensing with the common-law rule that a plea in bar waives all dilatory pleas, or pleas not going to the merits."   Of this principle we have no doubt whatever ; we have frequently followed and applied it ; and we did not depart from it in our ruling in the case now before us.   In *Little v. Harrington* the dilatory matter did not relate to jurisdiction over the person of the defendant, but it related to the question whether the plaintiff, who on his own theory was a joint owner of the goods for the conversion of which he brought the action, could sue as the sole owner without joining his co-owner. *Little v. Harrington* is no authority for the position that a defendant can appear in court and contest the progress of the cause, even through an appellate court, on a ground other than that which relates to jurisdiction over his person, and then set up that there is no such jurisdiction.   The case of *Byler v. Jones*, 79 Mo. 261, shows that such a defense as that of which we are now speaking—a plea of privilege—may be united in the same answer with matter of defense which goes to the

merits.    There is nothing in the opinion already delivered in this case which questions this principle.    We have no doubt of it.    We acted upon it in the case of *Christian v. Williams*, 35 Mo. App. 297, decided at the present term, in which we held, on the authority of *Byler v. Jones*, that the plea of privilege had not been waived by answering to the merits.    But it has never been held in this state that a party can come into court and make a contest expensive to his opponent on grounds which necessarily imply and admit the jurisdiction of the court over his person, and afterwards set up in his answer, for the first time, a plea of privilege asserting that the court has had no jurisdiction over him.    The plea of privilege is a defense that may be *waived*.    The statute (R. S., sec. 3522) indeed provides that the defendant *may* set forth in his answer as many defenses * * * as he may have.    Certainly he may, under this statute, set up any defense which he may have, provided he has not waived it; but the statute does not *oblige him* to set up the defense of want of jurisdiction over his person in this way; nor does it prevent him from waiving such a defense; nor does it change the rule, applicable in every country where the common-law system of jurisprudence prevails, that a party can not appear and litigate on the merits and afterwards set up the defense that the court has no jurisdiction over his person.    A demurrer on grounds other than those which relate to jurisdiction over the person of the defendant is itself *an appearance.* A defendant who files such a demurrer submits to the jurisdiction of the court, and when his demurrer is disposed of he will not be heard to say, "I have not been in court."    In this case the defendant came into court and demurred, on the ground that he was not properly sued because another party had not been sued with him.    He contested the case on this ground through the circuit court, appealed to this court, and was finally successful in this contest in this court.

After challenging the *manner* in which the suit was brought against him—after saying in effect, "I am not properly sued, because A B has not been sued with me," he will not be heard, under any system of jurisprudence, to say, "I have not been sued at all; I have never been in court." We went over this question at length in the case of *Christian v. Williams, supra,* and examined a great many decisions in other jurisdictions on this question of privilege, in nearly all of which it was raised by a *motion to quash* the return, and not by a dilatory plea. We know of no reason why the defendant could not have raised it in this way in the present case. The rule which we apply in this case proceeds upon the most obvious grounds of justice—so much so that a design is not to be imputed to the legislature to change the existing rule of law unless it has done so in express words. The reason is that a party to a judicial proceeding ought not to be allowed to put his adversary to the expense of a contest on grounds not relating to the jurisdiction of the court over his person and then to say that the court has no jurisdiction over his person. This is especially true where the party making the contest on a matter relating to the merits is, as here, successful in his contest. Here the defendant made a contest with the plaintiff over the fact that his late partner who incurred the liability jointly with him had not been joined with him as a defendant. He was finally successful in this contest; and now he asks to be allowed to say that he himself has not been sued at all. This can not be done.

II. This brings us to the second ground on which the motion for a rehearing is predicated. No decision of the supreme court has been cited to us with which our decision on the interpretation of the words "resident of this state," as used in the statute of limitations, is in conflict. The cases of *Chariton County v. Moberly,* 59 Mo. 242, and *Greene v. Beckwith,* 38 Mo. 387, holding that the

word "resident" in the attachment law is synonymous with domicile, have only an analogous bearing upon the question of the interpretation of the word "resident" in the statute of limitations.   The ruling of the supreme court in *Orr v. Wilmarth*, 95 Mo. 212 (overruling *Whittlesey v. Robert*, 51 Mo. 120), that where a defendant is a non-resident of the state at the time when the cause of action against him accrues, the running of the statute of limitations is not arrested by his coming into the state *temporarily*, asserts a principle which we have not questioned and do not question at all.   But it has no application to this case; for here the evidence plainly shows that the defendant Sims was a resident of this state at the time when the cause of action accrued.

We have re-read the record for the purpose of reassuring ourselves upon the question whether we were mistaken in our former opinion as to there being evidence tending to show that Sims was a resident of this state, within the view which we take of the meaning of the word resident in the statute of limitations, at the time when the cause of action accrued.   The evidence clears our minds of all doubt on this question.   It appears that Sims and his co-defendant, Rogers, were co-partners in the business of taking and executing various contracts for work under the name of Rogers & Sims; that in 1876 they became interested in a contract for the doing of work on Mill creek sewer in the city of St. Louis, jointly with another firm ; that they prosecuted this work from 1876 until the spring of 1878 ; that, from the commencement of this work until August, 1877, the defendant Rogers was the manager and financial agent of the partnership, and the defendant Sims had charge of getting out the stone and was regularly in St. Louis superintending the hauling of the stone from the landing on the river to the place where it was

needed on the work, and occasionally going up and down the river between St. Louis and Grafton, at which latter place the stone was procured ; that the contracts for carrying the stone from Grafton to St. Louis were made with the plaintiff by the defendant Sims acting for himself and his co-partner ; that in August, 1877, the defendant Rogers stepped out of the office of super-intendent and financial agent of the firm, and the defendant Sims took his place and acted as manager of the business, as its financial agent, and as paymaster of the hands employed, from that time until the time when he finally left the city in March, 1878—a period of about seven months.   The exercise of this office necessarily implied his constant presence in St. Louis, and that he was so present is fairly to be gathered from the testi-mony of three witnesses, Mr. Loler, Captain Bollman and Mr. Rogers.   From the commencement of the work down to the month of November, 1877, the plaintiffs had been carrying stone in their barges from Grafton to St. Louis for the defendants.   Bills for this work were presented monthly and were paid monthly, either in whole or in part.   After Sims became the financial man-ager, the bills were presented to him and were paid by him.   All the bills which were so presented were paid, except the bill which is the subject of this suit.   This bill was for the doing of such hauling in the months of September, October and November, 1877.   The evidence shows that Sims was dunned repeatedly for this bill ; that he repeatedly promised to pay it ; that he finally made several promises to pay it when he received the last installment due from the city of St. Louis for the work ; but that, on the night of the day on which he received this last installment, he left the city of St. Louis permanently to take a railway contract on the Chicago & Alton Railway Company's line in the northwest por-tion of Missouri ; that he remained on this contract for two or three months, and afterwards went to Colorado

to take another contract at Canon City ; that from Colorado he went to New Mexico ; and that from New Mexico he went to Arizona, where it seems his residence was at the time of the beginning of this suit.   There is not a particle of evidence, not a suggestion or a hint in the record, that, during the time when he was partner of the defendant Rogers as a contractor, and when they were prosecuting the work of building the Mill creek sewer in St. Louis, he had any residence, permanent or temporary, anywhere else than in the city of St. Louis. All this evidence was not objected to.   In addition to this, the evidence of Captain Bollman, not objected to, was that he went to the residence of Mr. Sims on Morgan street to see if he could not get this bill paid and found that Mr. Sims had left the city.

Captain Bollman was probably mistaken about its being Morgan street, for the defendant Rogers, partner of Mr. Sims, and who must have familiarly known where his residence was, testified that before 1878 he had lived on Chestnut street in the city of St. Louis. This was the only item of evidence bearing upon the question of the residence of Mr. Sims which was received against objection.   The objection to this was on the ground that it was "irrelevant."

Waiving the question whether an objection to evidence on the ground that it is irrelevant, without bringing to the mind of the court why or how it is irrelevant, is a good objection, we think that if a technical error was committed in overruling this objection it cannot be regarded as prejudicial, because we are still of opinion, as we held in the first place, that the averment that Mr. Sims was a resident of the state of Missouri prior to his leaving in 1878, is inferentially made in the petition. We are clear, upon the whole record, that a reversal of this case on this ground would produce no other result than an amendment of the pleadings and a little more

explicit testimony on the question of the residence of Mr. Sims prior to 1878, the effect of which would be to prolong this vexatious litigation and to increase the expense without in any way promoting substantial justice.

It cannot escape attention that this case has been defended from first to last upon extremely technical grounds; that technical defenses have been set up which were inconsistent with each other; that, after waiving the question of jurisdiction over his person, an objection has been predicated upon the supposed error of the court in not trying the question of jurisdiction before trying the merits; that the defendant is sued upon an obligation shown to have been contracted by him in person for himself and his co-partner; that it is shown that the charges for the work were reasonable; that it is shown that he promised again and again to pay the debt; that it is shown that he promised to pay it out of a particular fund; that it is shown that when he collected that fund instead of keeping this promise, he immediately left the city; that it further appears that he had no better defense than that, as between him and his co-partner, the latter and not he ought to pay, which is no defense either in law or in morals. It would be a travesty of justice to send this case back for another trial.

The motion for rehearing will be overruled. Judge BIGGS concurs. Judge ROMBAUER is absent.